**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| ) | |
| IN RE APPLICATION OF THE BRITISH ) | |
| BROADCASTING CORPORATION, ) | |
| ET AL., FOR ACCESS TO OPINIONS ) | Case No. 1:26-mc-81-JEB (D.D.C.) |
| AND ORDERS ADJUDICATING ) | |
| CERTAIN ASSERTIONS OF ) | |
| EXECUTIVE PRIVILEGE ) | |
| ) | |

**RESPONSE OF THE UNITED STATES TO APPLICATION OF THE BRITISH
BROADCASTING CORPORATION, ET AL., FOR ACCESS TO OPINIONS AND
<u>ORDERS ADJUDICATING CERTAIN ASSERTIONS OF EXECUTIVE PRIVILEGE</u>**

**TABLE OF CONTENTS**

INTRODUCTION ............................................................................................................... 1

BACKGROUND ............................................................................................................... 2

I.     Grand Jury Investigation Regarding President Trump ....................................... 2

II.    Prior Press Access Applications ......................................................................... 2

     A.     Executive Privilege Access Applications ............................................... 2

     B.     Attorney-Client Privilege Access Application........................................ 4

III.    This Application................................................................................................... 5

ARGUMENT ...................................................................................................................... 6

I.    Legal Principles Regarding Grand Jury Secrecy ............................................... 6

II.    Petitioners Have Not Made a Strong Showing of Particularized Need for the Unredacted Executive Privilege Rulings ........................................................... 9

III.    No First Amendment Right of Access Exists to Grand Jury Materials, Including Opinions and Orders Concerning Grand Jury Disputes....................................... 13

CONCLUSION.................................................................................................................... 18

**TABLE OF AUTHORITIES**

**CASES**

*Bartko v. U.S. Dep't of Just.*,
   898 F.3d 51 (D.C. Cir. 2018) ........................................................................... 8

*Branzburg v. Hayes*,
   408 U.S. 665 (1972) ........................................................................................ 7

*Doe v. Cabrera*,
   126 F. Supp. 3d 160 (D.D.C. 2015) ............................................................... 12

\* *Douglas Oil Co. of Cal. v. Petrol Stops Nw.*,
   441 U.S. 211 (1979) ................................................................................. *passim*

*Forbes Media LLC v. United States*,
   61 F.4th 1072 (9th Cir. 2023) ....................................................................... 17

*Globe Newspaper Co. v. Superior Court for County of Norfolk*,
   457 U.S. 596 (1982) ................................................................................. 17, 18

*Hodge v. FBI*,
   703 F.3d 575 (D.C. Cir. 2013) ....................................................................... 8

\* *In re Application of Conrad Smith*,
   No. 1:24-mc-165, 2025 WL 843279 (D.D.C. Mar. 18, 2025) ............................. 1, 10

\* *In re Application of New York Times Co.*,
   No. 1:22-mc-100, 2025 WL 1905544 (D.D.C. July 10, 2025) .................... 1, 2, 4, 14

*In re Application of Politico*,
   No. 23-5071, 2024 WL 1739096 (D.C. Cir. Apr. 23, 2024) ............................ 3, 8

*In re Grand Jury Subpoena, Judith Miller*,
   438 F.3d 1141 (D.C. Cir. 2006) .................................................................. 7, 15

*In re Grand Jury Subpoena, Judith Miller*,
   493 F.3d 152 (D.C. Cir. 2007) ............................................................... 8, 14, 16

\* *In re Motions of Dow Jones & Co.*,
   142 F.3d 496 (D.C. Cir. 1998) ................................................................. *passim*

*In re New York Times Co.*,
   657 F. Supp. 3d 136 (D.D.C. 2023) ................................................................ 2-3

*In re North*,
   16 F.3d 1234 (D.C. Cir. 1994) ....................................................................... 8

*In re Press Application for Access to Jud. Recs. Ancillary to Certain Grand Jury Procs Concerning Former Vice President Pence*,
678 F. Supp. 3d 135 (D.D.C. 2023) ................................................................... 8

*In re Sealed Case*,
199 F.3d 522 (D.C. Cir. 2000) ..................................................................... 7, 15

*In re Subpoena to Testify Before Grand Jury Directed to Custodian of Recs.*,
864 F.2d 1559 (11th Cir. 1989)................................................................... 15, 16

*McKeever v. Barr*,
920 F.3d 842 (D.C. Cir. 2019) ............................................................... 8, 13, 16

\* *Press-Enter. Co. v. Super. Ct. of Cal. for the Cnty. of Riverside*,
478 U.S. 1 (1986) ......................................................................................... 14, 16

*United States v. Index Newspapers LLC*,
766 F.3d 1072 (9th Cir. 2014)............................................................................ 16

*United States v. Procter & Gamble Co.*,
356 U.S. 677 (1958) ............................................................................................ 12

\* *United States v. Sells Eng'g, Inc.*,
463 U.S. 418 (1983) .............................................................................. 1, 7, 9, 10

*United States v. Smith*,
123 F.3d 140 (3d Cir. 1997)........................................................................ 15, 16

*United States v. Sutton*,
1:21-cr-598, 2023 WL 5827718 (D.D.C. Sep. 8, 2023)........................................ 9

*United States v. Williams*,
504 U.S. 36 (1992) ................................................................................................ 7

**RULES**

\* Fed. R. Crim. P. 6 ......................................................................................... *passim*

**INTRODUCTION**

In this action, the British Broadcasting Corporation ("BBC") and its corporate affiliates ("Petitioners") seek access to unredacted opinions and orders of this Court resolving assertions of executive privilege in connection with a grand jury investigation of President Trump. The government has already publicly released moderately redacted versions of these rulings in response to earlier press access applications. In *In re Application of New York Times Co.*, No. 1:22-mc-100, 2025 WL 1905544 (D.D.C. July 10, 2025) ("*In re New York Times Co.*"), journalists represented by the same counsel as Petitioners here argued for full access to these rulings, yet this Court ruled that the government's redactions were proper because the redacted information was secret grand jury information protected by Federal Rule of Criminal Procedure 6(e).

In seeking a different result now, Petitioners invoke an exception allowing courts to authorize disclosure of grand jury information "in connection with a judicial proceeding," Fed. R. Crim. P. 6(e)(3)(E)(i), arguing that they seek these rulings in connection with a case they are litigating against President Trump in his personal capacity. But the Supreme Court has held that a litigant invoking this exception must make a "strong showing of particularized need" for the materials. *United States v. Sells Eng'g, Inc.*, 463 U.S. 418, 443 (1983). Petitioners fail to make such a strong showing. They cannot show, as this Court held was necessary in a recent case, that "the material is central to litigating a case and the party has exhausted the normal discovery process to no avail." *In re Application of Conrad Smith*, No. 1:24-mc-165, 2025 WL 843279, at *4 (D.D.C. Mar. 18, 2025). Instead, all they can show is that the unredacted rulings might be incrementally useful in litigating a potential discovery dispute in President Trump's lawsuit against them.

Petitioners also argue for a First Amendment right of access to these rulings. But their counsel made this same argument in *In re New York Times Co.*, and this Court rejected it, holding that "there is no First Amendment right of access to grand jury proceedings" or to "ancillary

1

judicial proceedings like the ones at issue in this litigation." 2025 WL 1905544, at *3 (quoting *In re Motions of Dow Jones & Co.*, 142 F.3d 496, 499 (D.C. Cir. 1998)).  That ruling was correct, and the Court should rule the same way here.

## BACKGROUND

### I.    Grand Jury Investigation Regarding President Trump

As relevant here, a grand jury in this District conducted an investigation concerning the aftermath of the 2020 presidential election.  That grand jury later returned an indictment against President Trump.  *See* Indictment, *United States v. Trump*, 1:23-cr-257 (D.D.C. Aug. 1, 2023), ECF No. 1; *see also* Superseding Indictment, *United States v. Trump* (Aug. 27, 2024), ECF No. 226.  The district court ultimately granted the government's requests to dismiss the Indictment and Superseding Indictment in the election case.  *See* Order, *United States v. Trump* (Nov. 25, 2024), ECF No. 283; Order, *United States v. Trump* (Dec. 6, 2024), ECF No. 285.

### II.    Prior Press Access Applications

Petitioners here seek unredacted or less redacted versions of opinions and orders in ancillary grand jury matters that were at issue in earlier petitions for access filed by other journalists and news organizations.  In those matters, the government already publicly filed in redacted form the opinions and orders that Petitioners seek here.  In one of those matters, this Court ruled that the government's redactions were consistent with Rule 6(e) and rejected the same First Amendment argument that Petitioners make here.

#### A.    Executive Privilege Access Applications

In 2022, journalists filed two applications, which were later consolidated, seeking access to records regarding ancillary grand jury disputes over assertions of executive privilege in the election investigation.  *See generally In re New York Times Co.*, 1:22-mc-100 (D.D.C.).  The Court (then-Chief Judge Howell) denied the applications.  *See In re New York Times Co.*, 657 F. Supp.

3d 136 (D.D.C. 2023). Certain petitioners appealed. During the pendency of the appeal, prosecutors in the election case revealed in a public court hearing that there had been pre-indictment litigation in sealed proceedings regarding executive privilege. *See In re Application of Politico*, No. 23-5071, 2024 WL 1739096, at *2 (D.C. Cir. Apr. 23, 2024). The D.C. Circuit concluded that the district court's ruling denying the applications "was correct when it issued," but the D.C. Circuit vacated and remanded for reconsideration based on that subsequent disclosure. *Id.* at *4.

On remand, this Court called for supplemental briefing. During the proceedings, the petitioners agreed to narrow their request to *opinions and orders* resolving executive privilege disputes (rather than all records of those disputes). In their supplemental brief, petitioners (represented by the same counsel representing Petitioners here) argued that the records sought were no longer protected by Rule 6(e). *See* Pet'rs' Suppl. Br. in Supp. of Access to Judicial Recs. Ancillary to Certain Grand Jury Proceedings Concerning Former President Donald J. Trump, *In re New York Times Co.* at 10-12 (Aug. 23, 2024), ECF No. 25. The petitioners also argued that they had a First Amendment right to access the opinions and orders, in an argument that Petitioners largely copied verbatim in their First Amendment argument here. *Compare id.* at 12-18, *with* Mem. of P.&A. in Supp. of the Application of the British Broad. Corp., et al., for Access to Opinions & Orders Adjudicating Certain Assertions of Executive Privilege at 13-19, ECF No. 1 ("Mem.").

The government opposed in part. *See* Resp. to Pet'rs' Suppl. Br. in Further Supp. of Access to Judicial Recs. Ancillary to Certain Grand Jury Proceedings Concerning Former President Donald J. Trump, *In re New York Times Co.* (Sep. 13, 2024), ECF No. 28. The government argued that no First Amendment right to ancillary grand jury proceedings exists. *See id.* at 12-17. The

3

government agreed that the opinions and orders could be released, but with redactions for information still protected by Rule 6(e). *See id.* at 6-12. The government also submitted the opinions and orders to the Court *ex parte*, with the government's proposed redactions. *See id.* at 11. The Court then ordered the government to provide those opinions and orders to petitioners with the proposed redactions applied; the government did so by filing 18 redacted opinions and orders publicly on the docket. *See* Notice of Filing of Redacted Documents to Comply with Court Order, *In re New York Times Co.* (Oct. 28, 2024), ECF No. 32; *see also id.*, ECF Nos. 32-1 – 32-18 (redacted opinions and orders).

The Court later held that the government's redactions of the opinions and orders were proper under Rule 6(e). *See In re New York Times Co.*, 2025 WL 1905544, at *3-4. The Court also rejected the petitioners' First Amendment argument, explaining: "[T]here is no First Amendment right of access to grand jury proceedings. . . . The same is true for ancillary judicial proceedings like the ones at issue in this litigation." *Id.* at *3 (citation omitted). The Court ordered the government to provide petitioners with two additional brief orders, with any necessary redactions, that the government had inadvertently neglected to produce. *See id.* at *4. The government complied by filing those orders publicly on the docket, with minor redactions. *See* Notice of Filing of Documents to Comply with Court Order, *In re New York Times Co.* (July 16, 2025), ECF No. 37; *see also id.*, ECF Nos. 37-1, 37-2 (redacted orders).

## B.      Attorney-Client Privilege Access Application

In 2025, New York Times journalist Charlie Savage filed an application in this Court seeking access to certain records regarding ancillary grand jury proceedings involving assertions of attorney-client privilege and attorney work product protection in the election investigation and another investigation, not relevant here, concerning President Trump's handling of certain

documents.  *See* Appl., *In re Donald J. Trump*, ECF No. 1, No. 1:25-mc-8 (D.D.C. Feb. 10, 2025).

The government opposed in part, arguing that certain records could be released, but with redactions

for information still protected by Rule 6(e).  *See* Resp. of the U.S. to Appl. of Charlie Savage for

Access to Judicial Recs. Ancillary to Grand Jury Investigations, *In re Donald J. Trump* (May 5,

2025), ECF No. 4.  The government ultimately produced 18 redacted opinions, orders, and docket

sheets.  *See* Notice of Filing of Redacted Documents, *In re Donald J. Trump* (Sep. 29, 2025), ECF

No. 11.  Thirteen of those documents were opinions and orders already released in the executive

privilege access matter, with fewer redactions.  *See id.*, ECF Nos. 11-2; 11-3; 11-4; 11-5; 11-7;

11-8; 11-9; 11-10; 11-11; 11-13; 11-14; 11-15; 11-16.  The reason for the overlap was that these

opinions and orders concerned disputes involving assertions of both executive privilege and

attorney-client privilege.

   After the government made a supplemental production of certain transcripts not at issue in

this matter, the petitioner decided that he "d[id] not intend to contest the redactions in the materials

or otherwise challenge the Government's production," Status Report, *In re Donald J. Trump* (Mar.

13, 2026), ECF No. 22, and the parties then dismissed the case, Stipulation of Dismissal, *In re

Donald J. Trump* (Mar. 17, 2026), ECF No. 23.  Because the petitioner did not challenge the

redactions, the Court did not need to rule on them.

## III. This Application

   Petitioners ask this Court "to further unseal the opinions and orders issued in this District

adjudicating assertions of executive privilege that President Donald Trump made, or directed

others to make, in connection with the Special Counsel's investigation into the 2020 presidential

election."  Mem. 1.  That is, Petitioners ask this Court to issue unredacted (or with "narrow

redactions," *id.* at 19), the same 20 opinions and orders that were released in redacted form in the

executive privilege access matter (13 of which were released with narrower redactions in the attorney-client privilege access matter).

As Petitioners explain, President Trump, represented by private counsel in his personal capacity, has filed a lawsuit against Petitioners. *See* Mem. 1.  In the lawsuit, President Trump alleges that in a television documentary, Petitioners issued a "spliced-together version of President Trump's remarks" delivered on January 6, 2021, and that this "fabricated depiction" is "false and defamatory," as well as "unfair or deceptive."  Compl. ¶¶ 105, 117, *Trump v. British Broad. Corp.*, ECF No. 1, No. 1:25-cv-25894 (S.D. Fla. Dec. 15, 2025) ("*Trump v. BBC*").  The lawsuit brings claims for defamation *per se* and violation of the Florida Deceptive and Unfair Trade Practices Act. *Id.* ¶¶ 104-19.

In their Application, Petitioners assert that they and President Trump "have exchanged discovery requests and responses" in *Trump v. BBC*, and that "President Trump has responded to several of these discovery requests by objecting and asserting, *inter alia*, executive privilege." Mem. 8-9.  In the scheduling order currently governing *Trump v. BBC*, fact discovery is scheduled to continue until October 20, 2026.  Order Setting Trial & Pre-Trial Schedule, Requiring Mediation, & Referring Certain Matters to Magistrate Judge at 2, *Trump v. BBC* (Feb. 12, 2026), ECF No. 27.  Petitioners argue that they need the unredacted executive privilege rulings because it would be helpful to cite them in a discovery dispute regarding executive privilege that may, but has not yet, come before the *Trump v. BBC* court.  *See* Mem. 11.

## ARGUMENT

### I.      Legal Principles Regarding Grand Jury Secrecy

The federal grand jury occupies a unique and important position in our criminal justice system.  "It serves the 'dual function of determining if there is probable cause to believe that a crime has been committed and of protecting citizens against unfounded criminal prosecutions.'"

*Sells*, 463 U.S. at 423 (quoting *Branzburg v. Hayes*, 408 U.S. 665, 686–87 (1972)).  Accordingly, it "serv[es] as a kind of buffer or referee between the Government and the people."  *United States v. Williams*, 504 U.S. 36, 47 (1992).  To fulfill this important role, the grand jury has "always" been afforded "extraordinary powers of investigation and great responsibility for directing its own efforts."  *Sells*, 463 U.S. at 423.  The Supreme Court "consistently [has] recognized that the proper functioning of our grand jury system depends upon the secrecy of grand jury proceedings."  *Douglas Oil Co. of Cal. v. Petrol Stops Nw.*, 441 U.S. 211, 218 (1979).  Both "grand jury proceedings and related matters operate under a strong presumption of secrecy."  *In re Sealed Case*, 199 F.3d 522, 526 (D.C. Cir. 2000).  This rule of secrecy is "so well established" that the D.C. Circuit has noted "a plethora of authority recognizing that the grand jury context presents an unusual setting where privacy and secrecy are the norm."  *In re Grand Jury Subpoena, Judith Miller*, 438 F.3d 1141, 1150 (D.C. Cir. 2006) ("*Miller I*") (quoting *In re Sealed Case*, 199 F.3d at 526).

Federal Rule of Criminal Procedure 6(e) implements the traditional rule of grand jury secrecy.  It prohibits virtually every person privy to grand jury proceedings — other than witnesses or their counsel — from "disclos[ing] a matter occurring before the grand jury."  Fed. R. Crim. P. 6(e)(2)(B).  Covered individuals include grand jurors, interpreters, court reporters, and attorneys for the government.  *See id.*  Rule 6(e) requires that "[r]ecords, orders, and subpoenas relating to grand-jury proceedings must be kept under seal to the extent and as long as necessary to prevent the unauthorized disclosure of a matter occurring before a grand jury."  *Id.* at 6(e)(6).  Matters occurring before the grand jury include "not only what has occurred and what is occurring, but also what is likely to occur" in the grand jury's investigation.  *Dow Jones*, 142 F.3d at 500.  The Rule covers all "information that would 'tend to reveal some secret aspect of the grand jury's

investigation, including the identities of witnesses or jurors, the substance of testimony, the strategy or direction of the investigation, or the deliberations or questions of jurors.'" *Bartko v. U.S. Dep't of Just.*, 898 F.3d 51, 73 (D.C. Cir. 2018) (quoting *Hodge v. FBI*, 703 F.3d 575, 580 (D.C. Cir. 2013)).  Rule 6(e) also covers "the fact that [a witness] was subpoenaed to testify" and "the fact that he invoked [a] privilege in response to questions." *Dow Jones*, 142 F.3d at 501. Grand jury secrecy does not expire upon the conclusion of an investigation or a criminal case. *See McKeever v. Barr*, 920 F.3d 842, 843-44 (D.C. Cir. 2019) (holding that records from a grand jury investigation during the 1950s remained protected by Rule 6(e)).

Despite the general rule of grand jury secrecy, under certain circumstances, "when once-secret grand jury material becomes 'sufficiently widely known,' it may 'los[e] its character as Rule 6(e) material.'" *In re Grand Jury Subpoena, Judith Miller*, 493 F.3d 152, 154 (D.C. Cir. 2007) ("*Miller II*") (alteration in original) (quoting *In re North*, 16 F.3d 1234, 1245 (D.C. Cir. 1994)). One way that "grand jury matters may lose their protection" is "if prosecutors publicly disclose them." *In re Application of Politico*, 2024 WL 1739096, at *3 (citing *North*, 16 F.3d at 1245). Public disclosure of grand jury matters "by a witness before the grand jury, . . . or a witness's attorney" can also lift grand jury secrecy. *Id.* (citations omitted).  Even where such disclosures lift Rule 6(e) secrecy to some extent, redactions may be necessary, because a court must "reveal[] only those matters before the grand jury" that the government or a witness has disclosed, leaving "[a]ll other 6(e) material . . . tucked safely behind the grand jury's closed doors." *In re Press Application for Access to Jud. Recs. Ancillary to Certain Grand Jury Procs. Concerning Former Vice President Pence*, 678 F. Supp. 3d 135, 143 (D.D.C. 2023) (quoting *Dow Jones*, 142 F.3d at 505).

Rule 6(e) contains certain exceptions to the rule of grand jury secrecy, but that "list of exceptions is exhaustive." *McKeever*, 920 F.3d at 845.  At issue here is the exception stating that,

8

"[t]he court may authorize disclosure . . . of a grand-jury matter . . . preliminarily to or in connection with a judicial proceeding." Fed. R. Crim. P. 6(e)(3)(E)(i). This exception "require[s] a strong showing of particularized need for grand jury materials before any disclosure will be permitted." *Sells*, 463 U.S. at 443. Even where parties meet the threshold requirement to seek grand jury materials preliminarily to or in connection with a judicial proceeding, they "must show that the material they seek is needed to avoid a possible injustice in another judicial proceeding, that the need for disclosure is greater than the need for continued secrecy, and that their request is structured to cover only material so needed." *Douglas Oil*, 441 U.S. at 222. "[T]he burden of demonstrating" that the "need for [disclosure] outweighs the public interest in secrecy . . . rests upon the private party seeking disclosure." *Id.* at 223. This "standard is 'very demanding' and relief is 'exceedingly rare.'" Mem. Op. at 10, *In re Application for Access to Grand Jury Materials Relating to Hack of Democratic Nat'l Comm.*, Case No. 1:23-mc-133-JEB (D.D.C. Mar. 8, 2024), ECF No. 10 (quoting *United States v. Sutton*, 1:21-cr-598, 2023 WL 5827718, at *3 (D.D.C. Sep. 8, 2023)).

## II.   Petitioners Have Not Made a Strong Showing of Particularized Need for the Unredacted Executive Privilege Rulings

The government does not dispute that Petitioners seek the executive privilege rulings "in connection with a judicial proceeding," Fed. R. Crim. P. 6(e)(3)(E)(i), but Petitioners have failed to make the required "strong showing of particularized need," *Sells*, 463 U.S. at 443. In particular, they have not "show[n] that the material they seek is needed to avoid a possible injustice in another judicial proceeding," or that "the need for disclosure is greater than the need for continued secrecy." *Douglas Oil*, 441 U.S. at 222.

This Court recently applied Rule 6(e)(3)(E)(i) in order to deny a request for grand jury materials by litigants in another case against President Trump in his personal capacity. This Court

concluded that Supreme Court precedent "impl[ies] that a party can establish that access to grand-jury material is necessary to avoid a possible injustice when the material is central to litigating a case and the party has exhausted the normal discovery process to no avail."  *Smith*, 2025 WL 843279, at * 4.

Plaintiffs can make neither showing.  First, they cannot show that they have exhausted the normal discovery process.  Discovery is ongoing in *Trump v. BBC*, and is not scheduled to conclude until October 20, 2026.  Order Setting Trial and Pre-Trial Schedule at 2, *Trump v. BBC*. A hearing regarding certain discovery issues is scheduled for July 21, 2026.  *See* Paperless Order, *Trump v. BBC* (June 12, 2026), ECF No. 82.  As this Court has explained, other courts have allowed disclosure under Rule 6(e)(3)(E)(i) when it was already clear that "the discovery process cannot or will not yield material that might determine the outcome of a civil case."  *Smith*, 2025 WL 843279, at *4.  But this Court held that a request was "premature" when "fact discovery in their lawsuit is presently not scheduled to close until . . . over four months from now" and discovery disputes "have not yet been ruled on."  *Id.* at *5.  The circumstances are similar here.  Thus, the Court "cannot say definitively that 'ordinary discovery' has been 'insufficient.'" *Id.* (quoting *Sells*, 463 U.S. at 431).

For similar reasons, Petitioners also cannot show that the unredacted executive privilege rulings are "central to litigating" the Florida lawsuit.  *Id.* at *4.  Notably, Petitioners do not contend that the rulings themselves are relevant to any claim or defense in *Trump v. BBC*.  Rather, they contend that the rulings may be germane to a potential discovery dispute in *Trump v. BBC* about whether President Trump can withhold evidence in that case on the basis of executive privilege. *See* Mem. 11 ("Thus, to the extent this Court has ruled that President Trump cannot shield certain records and information pursuant to the executive privilege yet he proceeds to withhold them as

10

privileged in the Florida lawsuit despite that ruling, and the Applicants are unable to show that this claim of privilege is barred, the Applicants would be significantly prejudiced.").

Even Petitioners' worry that the redactions in these rulings will become relevant to a discovery dispute layers speculation upon speculation. Petitioners assert that they and President Trump "have exchanged discovery requests and responses," *id.* at 8, but they do not assert that a discovery dispute regarding executive privilege has crystallized before the court. They further acknowledge that President Trump has asserted other objections to discovery requests besides executive privilege. *See id.* at 9 (President Trump has "object[ed] and assert[ed], *inter alia*, executive privilege"). If President Trump maintains these non-executive privilege objections to Petitioners' discovery requests, and the court validates one of those other objections, then the court may never need to reach executive privilege issues. Even if the *Trump v. BBC* court ends up needing to rule on President Trump's executive privilege assertions, the redacted executive privilege rulings already demonstrate how this Court and then-Chief Judge Howell ruled, and much of the Court's legal reasoning. *See generally In re Application of the New York Times Co.*, ECF Nos. 32-1 – 32-18. At most, then, having unredacted instead of moderately redacted executive privilege rulings may be of incremental utility in litigating a question that may or may not become important in a potential future discovery dispute.

The Supplemental Notice recently submitted by Petitioners, *see* ECF No. 6, confirms that their professed need for the unredacted executive privilege rulings is speculative. One third-party subpoena recipient has apparently produced some documents, but he has indicated that some documents potentially responsive to two of nine document requests are subject to an unresolved potential assertion of executive privilege. *See* ECF No. 6-1. And the United States indicated that it may file a statement of interest regarding a pending motion for a protective order. *See* ECF No.

6-2.  The United States filed that statement of interest yesterday, which raised various objections to BBC's subpoenas of government agencies, but did not mention executive privilege.  *See* Statement of Interest by the United States of America, *Trump v. BBC* (July 14, 2026), ECF No. 96.  None of these developments shows that the unredacted executive privilege rulings are needed to avoid injustice in *Trump v. BBC*.

Petitioners' desire for information that might be incrementally helpful in litigating a potential future discovery dispute falls far short of the type of need for central evidence that courts have found is sufficient to trigger the exception.  "[T]he typical showing of particularized need arises when a litigant seeks to use 'the grand jury transcript at the trial to impeach a witness, to refresh his recollection, to test his credibility and the like.'" *Douglas Oil*, 441 U.S. at 222 n.12 (quoting *United States v. Procter & Gamble Co.*, 356 U.S. 677, 683 (1958)).  For example, in *Doe v. Cabrera*, where a plaintiff sued a defendant regarding an alleged assault that was the subject of a grand jury investigation, the court concluded that it was necessary to avoid injustice to provide the defendant with the transcript of the plaintiff's grand jury testimony, which was potentially exculpatory evidence.  126 F. Supp. 3d 160, 163-65 (D.D.C. 2015).  Plaintiffs cite no cases authorizing disclosure of grand jury information that is not itself relevant to the other case because it might be of use in litigating a potential future discovery dispute.

Finally, Petitioners are incorrect to argue that the need for disclosure outweighs the need for grand jury secrecy.  Petitioners' primary argument is that "the interests in continued grand jury secrecy are 'reduced' where, as here, the 'grand jury has ended its activities.'"  Mem. 12 (quoting *Douglas Oil*, 441 U.S. at 222 & n.13).  But the full sentence that Petitioners quote reaffirms the importance of grand jury secrecy even after the conclusion of an investigation: "Thus, the interests

12

in grand jury secrecy, although reduced, are not eliminated merely because the grand jury has ended its activities." *Douglas Oil*, 441 U.S. at 222. That is because

> in considering the effects of disclosure on grand jury proceedings, the courts must consider not only the immediate effects upon a particular grand jury, but also the possible effect upon the functioning of future grand juries. Persons called upon to testify will consider the likelihood that their testimony may one day be disclosed to outside parties. Fear of future retribution or social stigma may act as powerful deterrents to those who would come forward and aid the grand jury in the performance of its duties.

*Id.* As the D.C. Circuit concisely put it, "[t]he effect of an exception must be evaluated *ex ante*, not *ex post*." *McKeever*, 920 F.3d at 849. Both *United States v. Trump* and *Trump v. BBC* involve President Trump and have received significant public attention. Allowing access to grand jury materials from *United States v. Trump* for use in *Trump v. BBC* would, with great visibility, highlight the "risk" that "court[s] will later make [a grand jury] witness's testimony public," which would "likely" cause a "chilling effect on what a witness is willing to say to a grand jury." *Id.* The vital public interest in grand jury secrecy further counsels against granting the Application.

### III.    No First Amendment Right of Access Exists to Grand Jury Materials, Including Opinions and Orders Concerning Grand Jury Disputes

In the executive privilege access matter, this Court already rejected the same argument, made by the same counsel, that a First Amendment right of access exists for these same opinions and orders. The Court ruled as follows:

> [D]espite Petitioners' insistence (and setting aside any waiver issues), . . . there is no First Amendment right of access to grand jury proceedings. . . . The same is true for ancillary judicial proceedings like the ones at issue in this litigation. Under Rule 6(e), whose constitutionality is well established, the press does not have a right of access to documents in ancillary proceedings, regardless of how newsworthy and significant such proceedings may be, as they still implicate grand-jury-secrecy concerns. . . . Petitioners therefore cannot obtain any additional disclosures on First Amendment grounds.

13

*In re New York Times Co.*, 2025 WL 1905544, at \*3 (citations omitted).  Recognizing this ruling, Petitioners acknowledge that they "make this First Amendment argument in part to preserve it." Mem. 13 n.3.

This Court's ruling was correct, and no reason exists to reach a different result now. Petitioners' First Amendment argument fails because there is no First Amendment right of access to grand jury proceedings or ancillary proceedings.  The D.C. Circuit has held that "'there is no First Amendment right of access to grand jury proceedings,' nor do First Amendment protections extend to ancillary materials dealing with grand jury matters, such as" a judicial "opinion" addressing a dispute over grand jury subpoenas. *Miller II*, 493 F.3d at 154 (quoting *Dow Jones*, 142 F.3d at 499); *see also Dow Jones*, 142 F.3d at 499 (deeming it a "settled proposition" that "there is no First Amendment right of access to grand jury proceedings").

Even if this Court were free to consider the issue anew, which it is not, the result would be the same: there is no First Amendment right of access to grand jury proceedings, including judicial opinions resolving disputes over grand jury testimony.  The Supreme Court has held that the First Amendment right of access to criminal proceedings is governed by tests of "experience and logic." *Press-Enter. Co. v. Super. Ct. of Cal. for the Cnty. of Riverside*, 478 U.S. 1, 9 (1986).  Under the experience test, courts "consider[] whether the place and process have historically been open to the press and general public." *Id.* at 8.  Under the logic test, courts "consider[] whether public access plays a significant positive role in the functioning of the particular process in question." *Id.* Only if "the particular proceeding in question passes these tests of experience and logic" does "a qualified First Amendment right of public access attach[]." *Id.* at 9.  Where such a qualified right of access applies, proceedings can still be closed where "closure is essential to preserve higher values and is narrowly tailored to serve that interest." *Id.* at 13-14 (citation omitted).  But no

14

qualified First Amendment right of access exists here.  Grand jury proceedings fail both tests of experience and logic necessary to support a First Amendment right of access.

As a matter of experience, grand jury proceedings have not historically been available to the public.  Rather, "the grand jury context presents an unusual setting where privacy and secrecy are the norm."  *Miller I*, 438 F.3d at 1150 (quoting *In re Sealed Case*, 199 F.3d at 526).  Indeed, "secrecy . . . has been the persistent rule for grand jury proceedings for at least four hundred years." *Id.*  "A grand jury is a body that conducts its business in private.  The Framers knew this as well as we do.  'Since the 17th century, grand jury proceedings have been closed to the public, and records of such proceedings have been kept from the public eye.'"  *Dow Jones*, 142 F.3d at 499 (quoting *Douglas Oil*, 441 U.S. at 218-19 n.9).  Moreover, there is no consistent history "of open ancillary hearings dealing with the [executive] privilege in the grand jury context" of the sort that could support a First Amendment right of access.  *Id.* at 503.  Other circuits agree that under the experience test, there is no right of access to grand jury proceedings.  *See United States v. Smith*, 123 F.3d 140, 148 (3d Cir. 1997) ("[G]rand jury proceedings are not subject to a First Amendment right of access under the test of 'experience and logic.'  Historically, such proceedings have been closed to the public."); *In re Subpoena to Testify Before Grand Jury Directed to Custodian of Recs.*, 864 F.2d 1559, 1562 (11th Cir. 1989) ("grand jury proceedings are historically and presumptively secret").

The logic test is equally clear in weighing against a First Amendment right of access. Public access to grand jury materials is not necessary to proper functioning of the court system. To the contrary, grand jury "secrecy safeguards vital interests," including "(1) preserving the willingness and candor of witnesses called before the grand jury; (2) not alerting the target of an investigation who might otherwise flee or interfere with the grand jury; and (3) preserving the

15

rights of a suspect who might later be exonerated." *McKeever*, 920 F.3d at 844 (citing *Douglas Oil*, 441 U.S. at 219). As the D.C. Circuit and the Supreme Court have recognized, "[i]t takes little imagination to recognize that there are some kinds of government operations that would be totally frustrated if conducted openly. A classic example is that the 'proper functioning of our grand jury system depends upon the secrecy of grand jury proceedings.'" *Dow Jones*, 142 F.3d at 503-04 (quoting *Press-Enterprise*, 478 U.S. at 8-9); *see also Smith*, 123 F.3d at 148 ("public access to grand jury proceedings would hinder, rather than further, the efficient functioning of the proceedings"); *In re Subpoena*, 864 F.2d at 1562 ("secrecy of grand jury proceedings is essential to maintaining the effectiveness of the grand jury").

Petitioners make no real argument that the experience and logic tests support a right of access to grand jury proceedings. Instead, they argue that a First Amendment right of access to "court opinions and orders" exists, Mem. 13-16, and that this purported general right of access to opinions and orders applies even when the opinion or order addresses a dispute involving grand jury testimony and describes matters occurring before the grand jury, *id.* at 16-17. This argument is foreclosed by D.C. Circuit precedent, which holds that "First Amendment protections" do not "extend to ancillary materials dealing with grand jury matters, such as" a judicial "opinion" addressing a dispute over grand jury subpoenas. *Miller II*, 493 F.3d at 154. Petitioners invite this Court to "reject th[e] argument" that it should follow *Miller*, Mem. 16, but a district court lacks the authority to pick and choose which binding circuit precedents to follow. *Miller* is also consistent with a Ninth Circuit decision rejecting a First Amendment right of access to "proceedings concerning motions to quash grand jury subpoenas," including "the district court's order denying" such a motion. *United States v. Index Newspapers LLC*, 766 F.3d 1072, 1085, 1087 (9th Cir. 2014).

16

Moreover, Petitioners' argument is based on an incorrect framing of the First Amendment right of access. In applying the experience and logic tests to determine whether a qualified First Amendment right of access exists, the correct framing is the type of proceeding (*i.e.*, grand jury proceedings), not the type of judicial record (*i.e.*, opinions and orders). As the Ninth Circuit cogently explained, a "narrow focus on categories of documents is not correct." *Forbes Media LLC v. United States*, 61 F.4th 1072, 1083 (9th Cir. 2023). Rather than "consider[ing] the categories of documents sought abstracted from the proceedings in which they were generated," courts "evaluate[] the nature of the proceeding itself." *Id.* In *Forbes*, the petitioners claimed a First Amendment right of access to proceedings in which the government invoked the All Writs Act (AWA) to seek technical assistance from private companies relating to unexecuted arrest warrants, including court orders resolving the government's applications for assistance. *Id.* at 1076. The court analyzed the type of proceeding at issue—AWA technical assistance proceedings—and held that no First Amendment right of access to that type of proceeding existed. *Id.* at 1077-81. Because the correct framing was the type of proceeding, the court rejected the argument that a right of access to "orders" resolving AWA assistance applications existed because that "categor[y] of court documents [was] usually publicly available." *Id.* at 1083. Similarly, Petitioners cannot establish a First Amendment right of access to opinions and orders resolving disputes about grand jury testimony by arguing that there is a general First Amendment right to opinions and orders, abstracted from the type of proceeding in which the opinions and orders are issued.

In support of their argument that the Court should find a freestanding First Amendment right of access to opinions and orders, Petitioners cite *Globe Newspaper Co. v. Superior Court for County of Norfolk*, 457 U.S. 596 (1982), but that case supports the government's view. In *Globe*

*Newspaper*, the Court struck down as violative of the First Amendment a statute that mandated the closure of the court to the press and public during the testimony of a minor victim of a sex offense in a criminal trial. *Id.* at 598, 610-11. The Court explained that it "discerned a First Amendment right of access to *criminal trials* based in part on the recognition that as a general matter criminal trials have long been presumptively open." *Id.* at 605 n.13 (emphasis in original). "[T]he context of any particular criminal trial, such as a murder trial . . . or a rape trial" was not relevant to whether the qualified First Amendment right of access existed, but only to whether that qualified right could be overcome based on "the state interests assertedly supporting the restriction." *Id. Globe Newspapers* therefore supports the government's view that in applying the experience and logic test to determine whether a qualified First Amendment right of access exists to a type of proceeding, it is the type of proceeding that matters (criminal trials in *Globe Newspapers*, and grand jury proceedings here), not the specific type of record (testimony of a minor sex offense victim in *Globe Newspapers*, opinions and orders here). No First Amendment right of access attaches to grand jury proceedings, including opinions and orders issued in such proceedings.

Petitioners argue that a qualified First Amendment right of access cannot be overcome here. Mem. 18-19. But because no First Amendment right of access attaches here, the Court need not and should not apply the balancing test that courts use to assess whether the government has overcome the qualified right of access.

## CONCLUSION

For the foregoing reasons, the Court should deny the Application.

18

Dated:  July 15, 2026

Respectfully Submitted,

BRETT A. SHUMATE
Assistant Attorney General
Civil Division

ELIZABETH J. SHAPIRO
Deputy Director
Civil Division, Federal Programs Branch

*/s/ Jeremy S.B. Newman*
JEREMY S.B. NEWMAN
Chief Litigation Counsel
United States Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, N.W.
Washington, DC 20005
Tel: (202) 532-3114
Fax: (202) 616-8470
Email: jeremy.s.newman@usdoj.gov

*Attorneys for the United States*

19