**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| IN RE APPLICATION OF THE BRITISH BROADCASTING CORPORATION, ET AL., FOR ACCESS TO OPINIONS AND ORDERS ADJUDICATING CERTAIN ASSERTIONS OF EXECUTIVE PRIVILEGE | Case No. 1:26-mc-81-JEB |

**REPLY MEMORANDUM IN FURTHER SUPPORT OF THE**
**BBC'S APPLICATION FOR ACCESS TO OPINIONS AND ORDERS**
**ADJUDICATING CERTAIN ASSERTIONS OF EXECUTIVE PRIVILEGE**

The British Broadcasting Corporation ("the BBC") respectfully submits this reply to briefly address the three principal errors the government makes in its Response ("Resp.") (ECF 7) to the BBC's application to further unseal the Executive Privilege Decisions.[1] **First**, the government minimizes how significant the Executive Privilege Decisions would be to the defamation lawsuit that President Trump is pursuing against the BBC. **Second**, the government fails to identify any cognizable interest in maintaining the current, extensive redactions to the Executive Privilege Decisions. **Third**, the government seeks to insert an exhaustion requirement into Rule 6(e)(3)(E)(i) where – as this Court has recognized – no such requirement exists. The Court should reject the government's erroneous arguments and grant the BBC's application.

**I.      THE BBC HAS SHOWN A COMPELLING NEED FOR DISCLOSURE.**

The government concedes, as it must, that disclosure is proper under Rule 6(e)(3)(E)(i) when the party seeking access shows "that the material they seek is needed to avoid a possible injustice in another judicial proceeding, that the need for disclosure is greater than the need for continued secrecy, and that their request is structured to cover only material so needed." Resp. at

---

[1] BBC Studios Distribution Ltd. and BBC Studios Productions Ltd. have been dismissed as defendants in the defamation lawsuit in Florida that gave rise to this application. *See* Stip. of Dismissal*, Trump v. BBC*, No. 25-cv-25894 (S.D. Fla. July 16, 2026) (ECF 97).

9 (quoting *Douglas Oil Co. of Cal. v. Petrol Stops Nw.*, 441 U.S. 211, 222 (1979)).  The BBC satisfied that standard in its initial memorandum ("Mem."), and the government errs in response by trying to minimize the importance of disclosure to the BBC's defense of the defamation suit.

In that lawsuit, President Trump claims the BBC defamed him by editing his speech at the White House Ellipse on January 6, 2021 in a manner that he claims conveyed the allegedly false implication that he fomented the violence that followed at the Capitol.  Thus, as the BBC explained, and the government does not dispute, President Trump cannot prevail in his case if he cannot establish the *falsity* of that alleged implication.  Mem. at 11-12.  That is why the BBC has sent discovery requests to President Trump, served subpoenas on third parties, and issued *Touhy* requests to government agencies seeking to obtain the same evidence the Special Counsel gathered and described as "evidence establish[ing] that the violence was foreseeable to Mr. Trump, that he caused it, that it was beneficial to his plan to interfere with the certification, and that when it occurred, he made a conscious choice not to stop it and instead to leverage it for more delay."  *See id*. at 6 (quoting Smith Report at 66).  That includes, for example, evidence of President Trump's communications with his advisors during the three-hour period between his Ellipse speech and his message calling on the rioters to disperse.  *See* Smith Report at 29-31.

President Trump's assertions of executive privilege have already impeded the BBC from obtaining such evidence.  Most recently, the White House directed former Counsel to the Vice President Greg Jacob not to produce to the BBC "potentially responsive documents" because they are "subject to a potential assertion of executive privilege."  *See* Suppl. Notice at 2 (ECF 6).  As a result, the government errs in characterizing the Executive Privilege Decisions as "information that *might* be *incrementally* helpful in litigating a *potential* future discovery dispute."  Resp. at 12 (emphases added).  Instead, unsealed decisions will *likely* be *crucial* to

obtaining information that could be *dispositive* of President Trump's lawsuit, as the BBC expects them to show that President Trump's assertions of executive privilege have already been rejected, *see* Suppl. Notice at 3, and must fail again, *see* Mem. at 11.  The Court should therefore further unseal the Executive Privilege Decisions and prevent the injustice that would arise from President Trump using already-rejected privilege claims to withhold such vital information.

## II.    THE GOVERNMENT HAS NOT IDENTIFIED ANY INTEREST IN SECRECY THAT WOULD OUTWEIGH THE POWERFUL INTEREST IN DISCLOSURE.

The government further errs in failing to articulate any cognizable interest in maintaining the current redactions to the Executive Privilege Decisions, let alone an interest strong enough to outweigh the powerful interest in greater disclosure.  The only rationale the government offers is that further unsealing would "highlight the risk that courts will later make a grand jury witness's *testimony* public, which would likely cause a chilling effect on what a witness is willing to say to a grand jury."  Resp. at 13 (cleaned up and emphasis added).  And the only cases the government cites in support of that rationale likewise explain that disclosing grand jury *testimony* may deter future witnesses from testifying.  *Id.* (citing *Douglas Oil Co.*, 441 U.S. at 216 (addressing request for grand jury transcripts), and *McKeever v. Barr*, 920 F.3d 842, 849 (D.C. Cir. 2019) (same)).

The problem with this argument is that the BBC is not asking this Court to unseal *any* grand jury witness testimony.  Rather, the whole point of the ancillary proceedings that led to the Executive Privilege Decisions was to determine *whether* those witnesses could testify in the first place.  Unsealing the decisions to identify which assertions of executive privilege were rejected for which reasons and as to which witnesses does not necessarily reveal *anything* about what those witnesses ultimately testified.  The government has therefore failed to articulate *any* risk tied to disclosure of decisions adjudicating assertions of executive privilege, let alone enough of

3

a risk to outweigh the compelling need for disclosure to avoid potential injustice in President Trump's defamation case against the BBC.

**III.     THE PURPORTED EXHAUSTION REQUIREMENT DOES NOT EXIST.**

Finally, the government insists that unsealing is unjustified because the BBC has not "exhausted the normal discovery process," Resp. at 10, but the government errs once again in claiming that such exhaustion is required. As this Court explained in *In re Smith*, 2025 WL 843279, at *4 (D.D.C. Mar. 18, 2025), in a passage the government itself quotes, a party *can* demonstrate necessity for disclosure by showing that the requested "material is central to litigating a case and the party has exhausted the normal discovery process to no avail." *See* Resp. at 10. But the government ignores the rest of that same paragraph, where this Court went on to explain that "there is <u>not</u> 'a *per se* rule against disclosure' even when 'all of the relevant material could be obtained through civil discovery tools." *In re Smith*, 2025 WL 843279, at *4 (this Court's emphasis) (alterations omitted) (quoting *U.S. v. John Doe, Inc. I*, 481 U.S. 102, 116 (1987)). In other words, exhaustion may be a sufficient condition for disclosure in some circumstances, but it is not a *necessary* condition for disclosure under Rule 6(e)(3)(E)(i).

Indeed, the same paragraph in *Smith* adds even more support for unsealing. As this Court recognized, the test for disclosure under Rule 6(e)(3)(E)(i) is "'a highly flexible one,' and courts have 'wide discretion' to determine when 'the equities lean in favor of disclosure.'" 2025 WL 843279, at *4 (cleaned up) (quoting *John Doe, Inc. I*, 481 U.S. at 116-17). These equities favor disclosure. When the Special Counsel was investigating whether President Trump incited violence on January 6, President Trump made "repeated assertion of the presidential-communications privilege as a basis to withhold evidence," which "delayed the Office's receipt of important testimony and other evidence, including testimony from senior White House staff

and Executive Branch officials."  *See* Smith Report at 116.  "The courts uniformly rejected [these] privilege assertions seeking to deny the grand jury from hearing evidence from Executive Branch employees," *id.*, and the Special Counsel was able to obtain sufficient evidence to "determine[] that there were reasonable arguments to be made that Mr. Trump's Ellipse Speech incited the violence at the Capitol on January 6," *id.* at 66.  Yet even though President Trump has now chosen to sue the BBC for libel and specifically claimed it would be false to imply that his speech incited violence on January 6, he is again asserting executive privilege in an effort to stop the BBC from obtaining the *same* evidence from the *same* witnesses to support the *same* conclusion as to incitement.  Equity favors unsealing the Executive Privilege Decisions so that the BBC can respond to these already-rejected assertions of the privilege, obtain this important evidence, and defend itself effectively.

**CONCLUSION**

For these reasons, as well as those stated in the BBC's initial memorandum, the Court should promptly unseal the Executive Privilege Decisions to the greatest extent possible.

Dated: July 22, 2026

Respectfully submitted,

BALLARD SPAHR LLP

*/s/ Charles D. Tobin*
Charles D. Tobin (#455593)
Maxwell S. Mishkin (#1031356)
1909 K Street NW, 12th Floor
Washington, DC 20006
Tel: (202) 661-2200 | Fax: (202) 661-2299
tobinc@ballardspahr.com
mishkinm@ballardspahr.com

Sasha Dudding (#1735532)
1675 Broadway, 19th Floor
New York, NY 10019
Tel: (212) 223-0200 | Fax: (212) 223-1942
duddings@ballardspahr.com

*Counsel for the British Broadcasting Corporation*

5